1795.

---

## ALLEGHENY COUNTY,

## September Term, 1795.

### Leffee of JAMES HAMILTON *v.* ANDREW M'CULLOCH.

THIS was an ejectment for 306 acres in *Verfailles* townfhip, *Allegheny* county.

*Woods*, for the plaintiff, fhewed a warrant to *James Hamilton*, dated 16th *July*, 1787, for 300 acres of land, called the *Whiteoak-Level*, adjoining lands of the heirs of *M'Kee*, deceafed; a furvey on this warrant made 11th *October*, 1787, of 306 acres and 133 perches, and the allowance; and a patent dated 11th *March*, 1788. He then

shewed a deed from the sheriff of *Westmoreland* county, (which then included the land) dated 2d *August*, 1785, to *James Hamilton*, for 300 acres of land sold for 53*l.* on an execution against *James Thomson*, joining lands where *James Thomson* lives. This is the same land for which the patent was given on the warrant and survey, and is the land now claimed by the plaintiff.

It was then proved, that this land, which was known by the name of the *Whiteoak-Level*, had been claimed by *James Thomson*, and sold, as stated, to *Hamilton*, on a judgment against *Thomson*, in *Westmoreland* county, in which the land then was. When *Hamilton* bought the land from the sheriff, he asked *John M'Kee*, (who lived near the land, and from whom *M'Culloch* derives his title) what he thought of the land, whether it was good, and whether there was any dispute in it. *M'Kee* told him it was good, there was no dispute in it, it had always been known as *Thomson's*; and offered his service to *Hamilton* in renting or selling it. Afterwards a friend of *Hamilton's* hearing that *M'Kee* intended to take a warrant for this land in his own name, got an application and certificate made out in the name of *Hamilton*, and sent them down to *Carlisle*, where *Hamilton* lived, advising him immediately to take out a warrant. It was further proved, that adjoining this land, and the land on which *John M'Kee* lived, one *Goban*, brother-in-law of *M'Kee*, had, in 1770, made a settlement, and lived on it twenty-one years. *Goban* never claimed any part of the *Whiteoak - Level* tract, round which there were old lines, though there was no improvement on it. *John M'Kee* his father, and brothers, claimed the other land round *Goban's* farm, so that his claim was circumscribed to about sixty or seventy acres. This *Goban's* heirs sold to *John M'Kee* in 1786, for 25*s. per* acre. *M'Kee* went round *Goban's* claim, and found the lines between it and the *Whiteoak-Level* tract. *Goban's* improved land does not touch *Hamilton's* lines. In 1788, *M'Kee* took out a warrant in the name of *Hugh Goban*, and on it surveyed the *Whiteoak - Level* tract, together with *Goban's* claim; and afterwards sold part of the land to *M'Culloch*.

*Young*, for the defendant, shewed a warrant to *Hugh*

T

*Goban*, dated 22d *February*, 1788, for four hundred acres, including an improvement, joining lands of *John M'Kee*, *James Thomson*, and others, in *Huntington* township, *Westmoreland* county; a survey of three hundred and seventy-four acres, and twenty-four perches, made 19th *March*, 1788; a patent dated 8th *June*, 1788; a conveyance from *Hugh Goban* to *John M'Kee*, for 78l. dated 29th *June*, 1788; and a conveyance from *John M'Kee* to *Andrew M'Culloch*, of two hundred and twelve acres, dated 20th *May*, 1789.

*Young*, contended, that *M'Culloch*, as a *bona fide* purchaser without notice ought to be maintained in the possession of this land.

PRESIDENT. There is no evidence, that the disputed land was ever within the claim of *Goban*: it was always in the claim of *Thomson*. *Goban* might confine his claim within as narrow bounds as he pleased. He did confine himself, on the side next the *Whiteoak-Level* tract. What claims he might have, or how he might urge or dispute them, on any other side, or how much he might have sold to others, we know not. It seems he sold to *M'Kee* 60 or 70 acres, and never claimed any part of the *Whiteoak-Level* tract. *Hamilton* bought the only claim then known to it. He had a right to take out a warrant for it. He took out the first warrant for it. His title is complete. *Goban* had no equitable title to it. And *M'Kee's* legal title, being posterior to *Hamilton's*, is void. *M'Culloch*, therefore, purchased a void title, and whether *bona fide* or not, can derive no right under it.

Verdict for the defendant.