## Hoover *versus* Lock.

· When an individual claims land under an improvement, and subsequently takes a warrant for the land, and his survey is made and returned, he is bound by the survey. A settler may limit his claim to a less quantity than is usually surveyed, and he will be bound by his limitation, as against an intervening right.
: If an improvement be made, and a warrant be subsequently taken for the land on which the improvement was, and survey made, and then the land be sold by an administrator of the estate of the improver, no equity can be derived from the · improvement to support a second warrant, by the purchaser, for an additional quantity of land, which might have been included in in the former survey.

Two warrants cannot be taken under the same improvement.

Error to the Common Pleas of *Huntingdon County*.

This was an ejectment by Elias Hoover *vs.* John William Lock and Simon Lock, for a tract of land.

The defendants claimed under a settlement commenced by John Lock, in or about 1804 or 1805. They showed a warrant by John Lock, in August, 1846, for 400 acres, and surveyed in that month, on the land in dispute. The survey was regularly returned into the land office in August, 1846. The warrant calls for and dates the improvement back to the first of March, 1802, by commencing interest on his purchase from that date.

Hoover, the plaintiff, claimed under an improvement by one Ramsey, began in or about 1779. The occupancy, under this improvement, was interrupted. In 1809 or 1810, one McCune, perhaps a tenant of Ramsey, either died on the premises, and his widow and children lived there some time, and left *it*; or McCune left it before he died, in 1809 or 1810. For several years, perhaps till 1815, 1816 or 1817, there was no person residing on the land.

In May, 1813, James Ramsey, who was executor, and one of the heirs of John Ramsey, took a surveyor upon the land, claimed by his father, in his life time, and by his heirs, since his death, and had the lines run.

Witherow, the administrator of the estate of Ramsey, obtained a warrant, dated 9th October, 1846, for 300 acres, in part surveyed, as the draft from the office of the deputy surveyor shows, on the 28th November, 1846, and completed on the 19th June, 1847—330 acres surveyed—improved land. Interest from 1st July, 1800.

In 1846, Witherow, the administrator of the estate of Ramsey, sold at public sale 315 acres 38 perches, be the same more or less. It was knocked down to Caldwell, who purchased it for Hoover, the plaintiff. It was advertised as 300 acres of warranted land.

Deed by John Witherow, administrator de bonis non, &c., of John Ramsey, to Elias Hoover, 1st April, 1847, for land, descri-

[Hoover *v.* Lock.]

bing it by metes and bounds, containing 315 acres 38 perches, &c., be the same more or less; and also, all the right, title, interest, property, claim and demand of John Ramsey, at his death, of, into and out of all the contiguous land outside of said boundaries, which the said John Ramsey or his heirs have paid taxes for, or claimed by virtue of their improvement or possession, in Black Log Valley.

James Ramsey—My father had no other land, I believe, in Springfield township.

1847, June 15.—Warrant to Elias Hoover for 100 acres improved, &c., Black Log Mountain N. W. John Lock's improvements S. W. George Cluggage North, known as Ramsey's improvement, interest from 17th October, 1799.

Survey in the name of Elias Hoover for 100 acres, dated 19th June, 1847; surveyed by Samuel Caldwell, D. S.

Neither of these surveys on the warrant to Witherow or Hoover were certified from the land office. Samuel Caldwell proved them to be official surveys, made by him in the capacity of deputy surveyor.

His Honor, Judge Wilson, observed to the jury: "The warrant taken by Witherow, administrator of Ramsey, would have located for all that could be surveyed, according to the claim by the warrant, without interfering with the survey of Lock, which had been located. *It is in filling the call of the Hoover warrant,* which he claimed to have located under his purchase from Witherow, as stated in his deed, that occasioned the interference in their location.

The court *inter alia,* charged the jury:

The facts of the case are for you. The plaintiff, to authorize his recovery, cannot depend on the later warrants and surveys to make out his title. He must depend on his possession; and whether he has made out an actual, notorious, and distinct and adverse possession of the land in dispute, continued and uninterrupted for a period of twenty-one years previous to the bringing of this suit, you will determine.

Verdict was rendered for defendants.

There were a number of errors assigned. The material ones appear to have been:

The court erred in charging the jury that the plaintiff could not recover, unless he had shown an adverse possession against defendants, uninterrupted for twenty-one years, &c.

The court erred in instructing the jury that the statute of limitations of twenty-one years had any application to the case, as it appeared in evidence between the plaintiff and defendants; and that the plaintiff could not recover without bringing himself within the protection of the statute.

The case was argued by *Fisher* for plaintiff in error. He contended, *inter alia*, that no removal, short of seven years can prevent a subsequent possession from being attached to a former possession.

BURNSIDE, J., said, if a possessor leaves the land and remains away for years, and returns, he must begin *de novo.*

*Blair* and *McAllister* for defendants in error. It was contended that if the court are satisfied that plaintiff had not had adverse possession for twenty-one years, they would not reverse, although the court might think that he could sustain his other exceptions. That it did not appear that plaintiff had claim to *any* land, by occupancy, much less the land in dispute.

The opinion of the court was delivered by

BURNSIDE, J.—I throw out of this case the consideration of the applications of Brown and Harrison of 1767. These surveys were made before the revolution. Both parties settled, and held adverse to them. Neither are the owners of these ancient surveys, and both parties rely on their improvements, and subsequent warrants and surveys.

The improvement of Ramsey, under which the plaintiff claims, is the oldest, but it was often without an actual resident settler. It appears that he claimed the land in question in 1813, when he had a private survey made, which included it. His tenants also cleared some patches upon it, which were at times grown over with saplings.

Lock's settlement commenced about the year 1804, and was better continued than Ramsey's. After the death of Ramsey, his administrator took a warrant for 300 acres. He had a survey made, returned and accepted for 330 acres, excluding the land in controversy, prior to the defendant taking out his warrant. Witherow, the administrator of Ramsey, made a sale of the claim. It was bought by Caldwell, the deputy surveyor, for Hoover, who never entered any complaint against that survey at the land office, nor do we hear of any complaint from the heirs of Ramsey to correct that survey. Hoover got all the land he purchased and paid for. Lock took his warrant in 1846, calling for interest beyond the date of his improvement. and had the land in question included in his survey, which was returned and accepted. Subsequent to this, Hoover took a warrant for the land in dispute, which lay between his survey, on the Ramsey improvement, and the line run by Ramsey in 1813. No warrants or surveys were shown by either party from the land office; all the papers in evidence came from the office of the deputy surveyor. This bungling and slovenly mode of trying an ejectment is no credit to the profession.

[Hoover *v.* Lock.]

Hoover claims an equity from the old improvement of Ramsey. The taking of two warrants on one improvement is a novelty.— From me such a practice will receive no encouragement. It is inconsistent with the principles which have heretofore governed our land titles. Our law allows lands to be taken up by warrant and survey, or ₁by improvement, and a warrant founded on that improvement and a survey. I am unable to discover any equity or title, derived from Ramsey's improvement, to support this warrant of Hoover. Claims under improvements are classed as imperfect rights to land, 1 *Yeates,* 500, 516, although an improver in this purchase of 1754, in which this land is situated, was entitled to 300 acres, and at this time to 400, where there is so much vacancy. Yet he may take less, and when he comes to make his survey he may change his boundaries, or at any other time, provided the land is vacant, and no other is affected by the change. When he does take a warrant, and has his survey made and returned, he is bound by that survey, Davis *vs.* Keefer, 4 *Binn.* 161. A settler may limit his claim to a less quantity than is usually surveyed, and will be bound in his limitation as against an interfering right, Hamilton *vs.* McCulloch, *Add.* 272. When Hoover bought the land, surveyed and returned from Witherow, Lock had some possession of the land in dispute and claimed it.

I am unable to discover that the claim in his deed, beyond his purchase, can help him. His title only commenced for the land in controversy from the date of his warrant. I deem it unnecessary to review any of the other points raised by the learned counsel of the plaintiff, as the view I have taken of the cause puts an end to all controversy between the parties.

The judgment is affirmed.